# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0109V
UNPUBLISHED

| | |
|---|---|
| EVA GORDON,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: October 5, 2022<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Site of Vaccination<br>Influenza (Flu) Vaccine; Shoulder<br>Injury Related to Vaccine<br>Administration (SIRVA) |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for Petitioner.

*Sarah Black Rifkin, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FINDINGS OF FACT**[1]

On January 31, 2020, Eva Gordon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received in her right shoulder on October 6, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and a fact dispute has arisen with respect to Petitioner's ability to establish an element of her claim.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right arm/shoulder, as Petitioner has alleged.

## I.     Relevant Procedural History

After the matter's initiation in January 2020, Respondent filed his Rule 4(c) Report six months later, recommending entitlement to compensation be denied under the terms of the Vaccine Act. Respondent's Report at 1. ECF No. 29. Respondent argued that the contemporaneous records established that the vaccine was administered in Petitioner's *left* deltoid – not her right as alleged. *Id.* at 5-6.

In a Scheduling Order filed on June 22, 2021, I expressed the preliminary view that based on review of the existing record, a hearing would not be necessary, and that I intended to issue a fact finding as to the site of vaccine administration after providing the parties with an opportunity to file briefs and any evidence they wish to have considered. ECF No. 30. On August 6, 2021, Petitioner filed a motion for a ruling on the record regarding the site of vaccine administration. ECF No. 32. On September 7, 2021, Respondent filed a response brief, and on September 14, 2021, Petitioner filed her reply. ECF Nos. 33, 34. The matter is now ripe for adjudication.

## II.    Issue

At issue is whether Petitioner received the vaccination alleged as causal in her right arm. 42 C.F.R. §100.3(a) XIV.B. (2017) (influenza vaccination).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Finding of Fact

Based upon a review of the entire record, I find that the flu vaccine Petitioner received on October 6, 2018, was likely administered in her right arm/shoulder, as she contends. Specifically, I base my finding on the following evidence:

- Petitioner was treated for left shoulder and arm pain from August through November of 2013. Ex. 17 at 20-31. A medical note documenting Petitioner's November 8, 2013 appointment for left shoulder and arm symptoms indicates that her "[o]ther shoulder is normal." *Id.* at 30.

- Petitioner received a flu shot on October 6, 2018. Ex. 2 at 3. The record of vaccine administration indicates that the shot was administered into her left deltoid. *Id.*

- In her affidavit, signed on January 28, 2020, Petitioner avers that she asked the pharmacist to administer the flu shot in her *right* shoulder "because I had left arm issues in the past and planned on returning to volunteering with raptors (birds) which requires holding them on the left arm." Ex. 1 at 2.

- In an affidavit signed on February 7, 2020, Petitioner's husband testifies that "[t]he same day after getting the shot [Petitioner] came home and complained about pain in her right shoulder where she got the shot." Ex. 13 at 1.

- Petitioner presented to Dr. Anupam Pradhan on October 24, 2018 (three weeks post-vaccination) concerning bilateral shoulder pain. Ex. 3 at 9-10. The medical note documenting this appointment indicates that Petitioner "had adhesive capsulitis [in her l]eft shoulder 4 y[ears] ago," and that "[s]he was given a [f]lu shot [on] 10/6/18 with persistent right shoulder pain." *Id.* at 9. Dr. Pradhan's assessment included bilateral bursitis and shoulder pain. *Id.* at 10.

- Petitioner underwent an initial physical therapy evaluation for bilateral shoulder pain on October 26, 2019. Ex. 4 at 34-38. She reported "r[igh]t shoulder pain beginning Oct. 6, 2018 after [the] flu shot." *Id.* at 34.

- Petitioner returned to Dr. Pradhan on November 21, 2018 with complaints of bilateral shoulder pain. Ex. 3 at 6-7. The medical note again documents Petitioner's report of right shoulder pain following her October 2018 vaccination. *Id.* at 6.

- In her July 23, 2020 affidavit, Beverly Morgan recalls that on January 18, 2019, "[Petitioner] told me that she injured her right shoulder from a flu shot she received a few months earlier." Ex. 19 at 2.

- Petitioner presented to physical therapy for both of her shoulders on January 30, 2019. Ex. 4 at 81-85. The physical therapist noted Petitioner's report of right shoulder pain "due to the flu shot." *Id.* at 81.

4

- Petitioner underwent acupuncture on February 4, 2019. Ex. 6 at 1. The note documenting this appointment reflects Petitioner's report of "[p]ain [that] began after receiving flu vaccine injection into [r]ight shoulder." *Id.*

- On March 29, 2019, Petitioner had an initial evaluation with a chiropractor. Ex. 7 at 25-27. Petitioner reported having "a flu shot in October 2018 and . . . I had shoulder pain since. Had an MRI showing rotator cuff tear (minor) and frozen shoulder in my right arm where I had the injection." *Id.* at 25.

- On an August 5, 2019 patient information form, Petitioner indicated that she was diagnosed with frozen shoulder in October 2018. Ex. 8 at 22. Petitioner further indicated that this condition "started after flu shot." *Id.*

- On July 29, 2020, Petitioner presented for chiropractic treatment. Ex. 18 at 1-4. Petitioner's chief complaint was "[n]eedle injury from the flu vaccine on right arm/shoulder." *Id.* at 1.

- In an affidavit signed on February 18, 2020, Emily Masopust averred that "[Petitioner] told me that she got a flu shot that did some damage to her right shoulder." Ex. 15 at 1.

The above-referenced evidence supports a finding that the vaccine at issue was likely administered in Petitioner's right shoulder. In the context of seeking care, Petitioner consistently reported that the vaccine had been administered in her right arm, and that her injury was associated with the vaccination. Accordingly, there is some record support for her contention about the situs of administration beyond witness statements. The record of Petitioner's October 24, 2018 visit to Dr. Pradhan – the first record in which she complained of pain associated with her vaccination - is particular persuasive. During this visit, Petitioner reported that "[s]he was given a [f]lu shot [on] 10/6/18 with persistent right shoulder pain." Ex. 3 at 9. This record is only 18 days after vaccination, and is the most contemporaneous record other than the vaccine administration record itself.

In addition, Petitioner has provided a logical explanation for why she would have specifically requested that the vaccine be administered in her right arm. In her affidavit, Petitioner asserts that she asked the pharmacist to inject the vaccine into her right arm because of previous "left arm issues." Ex. 1 at 2. And the medical records show that Petitioner had a history of left shoulder pain that began approximately five years before her flu shot. *See* Ex. 17 at 20-31.

I acknowledge that the vaccine record *itself* does not set forth the site of vaccination. Ex. 2 at 3. However, it is the first record at issue, and stands alone in

suggesting a left shoulder situs. All other medical records filed in this case and bearing on Petitioner's post-vaccination treatment support a finding that the vaccine was administered in Petitioner's right arm, and Petitioner's statements amplify reasons to find this to be the case. *See, e.g. Parker v. HHS*, No. 15-1331V, 2016 WL 3443929 (Fed. Cl. Spec. Mstr. May 13, 2016)(finding that a vaccine record recording administration in the left arm was incorrect based primarily on petitioner's consistent attribution of his right shoulder condition to his vaccination throughout his treatment).

Accordingly, preponderant evidence establishes that the vaccination alleged as causal in this case was more likely than not administered to Petitioner in the right arm/shoulder on October 6, 2018.

### V.      Scheduling Order

Given my finding of fact regarding the site of vaccine administration, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case. Respondent shall file, by no later than **Friday, November 4, 2022**, a status report concerning how he intends to proceed.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master